UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:09-cr-180 |
| v. ) | |
| ) | *Mattice / Lee* |
| ANTHONY GEORGE ) | |

**REPORT AND RECOMMENDATION**

Before the Court is the motion of Defendant, Anthony George, to suppress a .22 caliber handgun discovered during an encounter with police on March 7, 2009 [Doc. 10]. The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 11]. The Government filed a response in opposition [Doc. 14] and an evidentiary hearing was held on February 23, 2010. In addition, each of the parties submitted post-hearing briefs [Doc. 16, 17]. After careful review, I find no constitutional violation with respect to the seizure of the handgun, and I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I.    BACKGROUND**

   **A.    Evidence Adduced at the Evidentiary Hearing**

At the hearing, the Government offered the testimony of Officer William Salyers ("Salyers"), an employee of the Chattanooga Police Department ("CPD"). Defendant did not impeach Salyers' credibility, nor was the substance of his account of his encounter with Defendant called into question by any of the proof. I **FIND** Salyers' testimony credible and therefore adopt his undisputed account of his encounter with Defendant as detailed below.

On May 7, 2009, Salyers was on "normal patrol" during the "midnight shift" in the East Lake area of Chattanooga. Salyers had been employed by the CPD for approximately three years, and he had worked in the East Lake area for approximately a year and a half.

At the pertinent time, described as "late night," Salyers was not responding to a call, but was merely driving alone in his patrol car through the area, alert for any suspicious activity. Salyers turned off of Rossville Boulevard onto 43rd Street, and he observed a car stopped in the street. Two individuals were standing next to the stopped car on the passenger side. Salyers did not recognize the individuals, but they were later identified as Demetrice Pointer ("Pointer") and Defendant. Salyers did not activate his patrol car's blue lights. As he drove up behind the stopped car, it drove away without speeding or breaking any laws. As Salyers stopped his patrol car, Pointer and Defendant began to walk toward it.

Salyers was suspicious of the activities of Pointer and Defendant because the Rossville Boulevard area is a high crime area with drug activity, much drug activity occurs late at night and it was "late night," drug deals are often made by "hand-to-hand exchanges" from cars, there were not many other cars/people on the road, and Defendant and Pointer were standing next to a stopped car.[1] Salyers did not see any exchange of drugs or other criminal activity between Pointer or Defendant and the occupant(s) of the car and he admitted the men could have merely been talking.

As Salyers exited his patrol car, the "first words out of [his] mouth" was a command that Pointer and Defendant "put your hands on my car." Salyers acknowledged that even though there are residential homes in the area, he did not ask whether they lived in the area or what they were

---

[1] Pointer was wearing a t-shirt and shorts, and Defendant was wearing a long-sleeved black t-shirt and jeans. Defendant's t-shirt was baggy and Salyers could not see Defendant's hands because they were covered by his sleeves. Defendant was also wearing a baseball cap with a ski mask underneath, but Salyers could not and did not see the ski mask until later. Although the Government initially relied upon the Defendant's "cold-weather" clothing to support its argument in opposition to Defendant's motion, Salyers' testimony indicates Defendant's clothing was not a factor supporting reasonable suspicion. In any event, the Court need not address whether reasonable suspicion existed as noted herein.

doing. Salyers also acknowledged that neither Defendant nor Pointer were free to leave from the initiation of this encounter. Salyers explained that he immediately commanded them to place their hands on his patrol car because he wanted to conduct a pat-down for officer safety.

In response to Salyers' initial command, Pointer complied but Defendant did not. Salyers again ordered Defendant to put his hands on the patrol car again, but Defendant still did not comply. Instead, Defendant began to walk around the patrol car. After Salyers ordered Defendant to put his hands on the patrol car a third time, Defendant still did not comply. Defendant did not say anything--he simply failed to obey Salyers' commands. As Defendant walked behind Pointer, Salyers drew his weapon. Salyers then heard the sound of a metal object hitting the ground, and he ordered Defendant to the ground. Again, Defendant did not comply, but he began to run around the patrol car. Salyers gave chase and "cut him off." Defendant reversed directions, but Salyers was able to overtake Defendant and pull him to the ground by his shirt, still beside the patrol car. Salyers held Defendant there at gunpoint until other officers arrived.

After other officers arrived and assisted Salyers in handcuffing Defendant, they inspected the area where Salyers had heard the metal object hit the ground and discovered the .22 caliber handgun behind the left front wheel of the patrol car. While the officers were talking among themselves, Defendant blurted out that he found the gun on the side of the road. At the time Defendant interjected this statement, he was in handcuffs but had not yet received a Miranda warning because the officers were not questioning him.[2]

Defendant offered the testimony of Steven Turman, an investigator employed by Federal

---

[2] Although Defendant also seeks to suppress this statement, he stated there is no basis for suppressing the statement if the gun is not suppressed. Therefore, Defendant's statement will not be separately addressed herein.

3

Defender Services. Mr. Turman credibly testified that Defendant's home was located approximately 100 yards from where he was arrested.

## II. ANALYSIS

Defendant seeks to suppress the gun,[3] arguing that Salyers lacked reasonable suspicion to justify a *Terry* stop. The Government contends that the *Terry* stop was justified by reasonable suspicion, but even if it was not, no seizure was effected until after Defendant abandoned the gun. The Court need not reach the issue of whether Salyers was initially justified in attempting to conduct a *Terry* stop because Defendant abandoned the gun before he was seized.

A defendant who abandons contraband prior to his seizure cannot challenge its admission, even if the abandonment was prompted by unlawful police conduct. *California v. Hodari D.*, 499 U.S. 621, 623-24, 624 n.1 (1991); *United States v. Martin*, 399 F.3d 750, 752-53 (6th Cir. 2005). Whether Defendant can invoke the protections of the Fourth Amendment, therefore, depends on whether he abandoned the gun before he was seized. *See Hodari D.*, 499 U.S. at 623; *Martin*, 399 F.3d at 752 ("[T]he fourth amendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure.").

A seizure occurs when law enforcement officers apply physical force to the suspect or make a "show of authority" such that, "'in view of all the circumstances surrounding the incident, a

---

[3] Defendant does not admit that the gun is his, and Defendant's standing to challenge its admission might therefore be questioned. *See United States v. Salvucci*, 448 U.S. 83, 85 (1980) (holding that defendants do not automatically have standing to challenge the admission of evidence they are charged with possessing, but must establish that their own Fourth Amendment rights have been violated). The testimony at the hearing, however, tends to show the gun was possessed by Defendant. In addition, Defendant's legal argument is not inconsistent with his possession of the gun, and a defendant is entitled to take different positions at a suppression hearing and trial. *See id.* at 88-89. Furthermore, the Government specifically waived any argument that Defendant lacked standing.

4

reasonable person would have believed that he was not free to leave.'" *United States v. Smith*, No. 08-4378, 2010 WL 446970, at *3 (6th Cir. Feb. 10, 2010) (quoting *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009)). A show of authority alone, however, "'is at most an attempted seizure.'" *Id.* at *4 (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). A seizure by show of authority is not consummated until the suspect actually submits to the officer's authority. *Id.*

Whether a person has in fact submitted to authority depends on "what [that] person was doing before the show of authority . . . ." *Brendlin*, 551 U.S. at 262. The *Brendlin* Court offered two examples: "a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Id.* Decisions of the Sixth Circuit Court of Appeals provide further guidance. For example, a passenger who jumped out of a car after the car was hemmed in by police, as if to run away, was not seized until he complied with an officer's order to stop. *Jones*, 562 F.3d at 774. Similarly, a man who "ignored the command" of an officer to stop was not seized until the officer drew his weapon and the suspect raised his arms. *United States McCauley*, 548 F.3d 440, 441-43 (6th Cir. 2008). Again, it was the suspect's *compliance* with the officer's show of force, and not the show of force itself, that effected the seizure. *See Adams v. City of Auburn Hills*, 336 F.3d 515, 520 (6th Cir. 2003) ("This court has specifically held that shooting at a fleeing felon, but missing, is not a 'seizure.'").

Defendant argues that he acquiesced to Salyers' commands by remaining "in the presence of the officer" rather than fleeing or walking away. To the contrary, I **FIND** Defendant never submitted to Salyers' show of authority. Although Salyers ordered Defendant three times to put his hands on the patrol car, Defendant ignored those orders. Instead, Defendant walked around the patrol car, and behind Pointer. Defendant did not obey or acknowledge Salyers' commands or

5

explain his failure to do so. Even when Salyers drew his weapon, Defendant still did not submit, but instead dropped a metallic object to the ground where Salyers could not see it. Salyers' next command, ordering Defendant to the ground, was also disobeyed. Defendant instead started to run around the car, but Salyers "cut him off" and Defendant reversed directions, forcing Salyers to continue chasing him, finally dragging him to the ground by his shirt. I **CONCLUDE** that only then, when Salyers applied physical force to Defendant to subdue him, was Defendant seized.

Accordingly, I **CONCLUDE** Defendant cannot invoke the Fourth Amendment's protections because he abandoned the gun before he was seized.[4]

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[5] that Defendant's motion to suppress [Doc. 10] be **DENIED**.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court also need not determine whether Defendant in fact dropped the gun where Officer Salyers heard the metallic object hit the ground. If he did not--i.e., if it was not in his possession--then he has no personal expectation of privacy to challenge its admission under *Salvucci*, 448 U.S. at 85. If he did, then he abandoned it at the moment he dropped it. Abandonment must be intentional, *see United States v. Britton*, 335 F. App'x 571, 574-75 (6th Cir. 2009), but there is no evidence here to rebut the natural inference that if Defendant dropped the gun, he did so to conceal his possession of it from Salyers.

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).